Georgette Messenger and David S. Shapiro, Executors of
the Last Will and Testament of Elmer Messenger,
Deceased, and Georgette Messenger, Individually,
Plaintiffs-Appellees, v. Milton D. Rutherford, De-
fendant-Appellant.

Gen. No. 51,065.

First District, First Division.

January 23, 1967.

Rehearing denied March 6, 1967.

Myer H. Gladstone, of Chicago, for appellant.

Morgan, Halligan, Lanoff & Cook, of Chicago (Samuel M. Lanoff and John A. Cook, of counsel), for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiffs, as executors of the estate of decedent, seek to recover from defendant the balance on an account stated made shortly before the death of the decedent. Defendant appeals from an order which dismissed his counterclaim after finding that his claim "is now barred by Section 204 of the Probate Act of Illinois." The order also struck portions of defendant's answer to plaintiffs' complaint. The trial court further found there was no just reason for delaying appeal from the order.

Elmer Messenger, now deceased, and Milton D. Rutherford, defendant, were involved in a number of oil drilling ventures over a period of years. These ventures were agreed to in a series of oral contracts. Messenger died on April 10, 1961, and letters of administration were issued in the Probate Court of Cook County on April 24, 1961. On February 6, 1963, the executors filed the instant complaint against defendant, claiming $29,000 for

the purchase of fractional interests in five oil wells (including drilling and equipment) and $1,525.71 for defendant's pro rata share of operating expenses for eleven oil wells (including the aforementioned five) for the 11-month period preceding Messenger's death. In addition, Georgette Messenger, Elmer Messenger's widow, claimed individually $2,903.78, alleging that after her husband's death she had continued operating the wells. This latter amount was claimed to represent defendant's pro rata share of expenses incurred by Mrs. Messenger.

The complaint alleged that the contracts, as they related to each well, involved the sale of an agreed fractional interest in the well at a fixed price, which included drilling costs, and if oil was found, an additional fixed price to include equipment and completion. It was further alleged as to the five wells that prior to the death of Elmer Messenger, a full, just and true account, dated March 21, 1961, was made and stated between the defendant and the decedent, which showed that a balance of $29,000 was due decedent from the defendant over and above all sums received by defendant and from which he was entitled to credit, which account was received and retained by defendant without objection being made thereto.

Defendant's answer and counterclaim were filed August 5, 1964. The answer denied the March 21, 1961, statement of account and alleged that the decedent had a fiduciary duty to charge the actual proportionate cost of drilling, which was actually $11,175.60, and that the statements rendered by decedent were false, and defendant did not become aware of that fact until 1962. Defendant's counterclaim alleged that defendant was charged $65,501.20 in excess of his pro rata share while drilling and completing seventeen oil wells, and after allowing credit for the amounts claimed in the complaint

27

defendant claimed "a net indebtedness due him from the Plaintiffs of $32,071.71."

Plaintiffs then moved to dismiss the counterclaim, alleging that the claim on which it was based was barred by section 204 of the Probate Act, because "the nine-month period for filing claims in the Probate Court of Cook County applicable to said estate expired on January 24, 1962," and "no additional assets were inventoried subject to claims following said date." Plaintiffs further alleged that the counterclaim related to charges on transactions which were completed prior to the transactions set forth in plaintiffs' complaint, and on which the alleged account stated was based.

Subsequently, the trial court dismissed the counterclaim after finding that it "was filed after the nine month period for filing claims against the Estate of Elmer Messenger, Deceased, which said period expired on January 24, 1962, . . . that no claims were filed in the Probate proceeding . . . by Milton D. Rutherford, Defendant and Counter-Plaintiff, and that his claim against said Executors is now barred by Section 204 of the Probate Act of Illinois." The same order also struck portions of defendant's answer to the complaint.

As to the merits of the counterclaim, defendant's principal contention is, "when the deceased fraudulently withheld certain important facts from the defendant, which if known to him, would have induced him to act during the deceased's lifetime or within the nine month period provided for in said Section 204, the limitation in said Section is tolled."

Initially, we note that defendant, in his brief and during oral argument, makes no attempt to assert his right to proceed with his counterclaim against after-discovered assets. See In re Estate of Bird, 410 Ill 390, 396, 102 NE2d 329 (1951). Therefore, our determination of defendant's right to assert his counterclaim is limited

to its alleged enforceability against decedent's assets inventoried within the nine-month period following the issuance of letters testamentary.

 It has been repeatedly said, "This provision creating a limitation upon the time for filing claims against an estate is not a general statute of limitations. The purpose of the act in regard to the administration of estates was to facilitate their early settlement, and the limitation for the exhibition of claims . . . had that particular purpose in view. A claim not exhibited within the time fixed is not absolutely barred but its right to participate in the distribution of the assets of the estate actually inventoried or accounted for is lost." (Sanders v. Merchants State Bank, 349 Ill 547, 566, 182 NE 897 (1932).) The time limitation section on claim filing is "a specific act adopted for the particular purpose of facilitating the early settlement of estates." (Durflinger v. Arnold, 329 Ill 93, 98, 160 NE 172 (1928).) A probate court cannot authorize an administrator to pay a claim after the claim has been barred from payment under the statute. "To authorize payment under these circumstances would in effect nullify the provision in the statute." Yaple v. Mahy, 241 Ill App 446, 453 (1926).

 Where a claim against an estate is filed and allowed after nine months from the granting of letters, the order or judgment allowing the same must be special, ordering payment only out of assets which have not been inventoried within nine months from the issuance of letters or accounted for by the administrator. Austin v. City Bank of Milwaukee, 288 Ill App 36, 44, 5 NE2d 585 (1936).

Defendant's authorities on the contention that fraud on behalf of the "decedent" tolls the provisions of section 204 of the Probate Act are not in point. They do support the maxim that "no man may take advantage of his own wrong," but these cases are based on fraud occurring between living litigants and do not involve estates of

29

decedents. With the exception of expenses of administration and "surviving spouse's or child's award," section 204 contains no exceptions to its pronouncements that "all claims . . . not filed within 9 months . . . are barred as to the estate which has been inventoried within 9 months from the issuance of letters."

In holding that a mental incompetent's claim was "barred under the nonclaim statute, sec 204 of the Probate Act as to inventoried assets of the estate," in Pratt v. Baker, 48 Ill App2d 442, 199 NE2d 307 (1964), the court said (p 444):

> "Accepting the stated purposes of the nonclaim statute to be the facilitation of an early and final settlement of estates, it becomes readily apparent why the exceptions as to persons with disabilities were omitted from the present act. To make exceptions for disabilities, whatever their nature, would only serve to destroy the very object of the nonclaim statute and not only prolong the administration of estates indefinitely and, in some instances, almost interminably, but also subject the executors and administrators to such an indeterminable future liability that a knowledgeable person would be reluctant to accept the responsibility."

And at page 445:

> "A summary of the decisions of nonclaim statutes is set forth in 34 CJS, Executors and Administrators, sec 404, from which the following is quoted: 'Where, however, the statute of nonclaim makes no exception as to any persons or class of persons, the courts can make none; and hence, as a general rule, and in the absence of some provision to the contrary, the statutes of nonclaim run against nonresident as well as resident, and infant as well as adult claimants, and also against married women and insane persons, and the estate of a deceased creditor.' "

We conclude that "decedent's fraud" does not toll the provisions of section 204. Therefore, the order of the trial court was proper insofar as it barred defendant's claim as to the assets which had been inventoried within nine months from the issuance of letters.

As defendant does not assert error as to the dismissal of his counterclaim against Georgette Messenger, individually, we have not considered that part of the order.

■ Although defendant's appeal from that part of the order which dismissed his counterclaim is proper on the theory it was a final and appealable order (Wilson v. Tromly, 336 Ill App 403, 406, 84 NE2d 177 (1949)), the part of the order which struck portions of defendant's answer was not final and appealable, even though so found by the trial court. Therefore, we have not considered that part of defendant's appeal.

For the reasons given, the dismissal of defendant's counterclaim is affirmed insofar as it applies to decedent's assets inventoried within the nine-month period following the issuance of letters testamentary, and the cause is remanded for further proceedings in accordance with the views expressed herein.

Affirmed in part; not considered in part, and remanded with directions.

BURMAN and ADESKO, JJ., concur.